ALFRED H. NELSON, ADMINISTRATOR OF THE ESTATE OF CHARLES A. NELSON, RESPONDENT *v.* SOUTHERN PACIFIC COMPANY, APPELLANT.

*Jury Commissioners—Selecting Jurors—Directory Statutes—Sec. 1306 R. S.—1898.*

The law fixing the time for the appointment of jury commissioners as well as sec. 1306 R. S. 1898, providing for the selection of jurors by them is directory, as to time.

*Powers of Appellate Court—Const. Art. 8, Sec. 9.*

Under Sec. 9, Art. 8, of the Constitution an appellate court cannot review findings of fact further than is necessary to determine questions of law.

*Negligence—Contributory Negligence—Questions of Fact for Jury.*

The question of negligence on the part of the appellant, and contributory negligence on the part of deceased, was properly submitted to the jury.

*Negligence Per Se.*

It was negligence on the part of the appellant, not to maintain its snow sheds high enough for a person to pass beneath it safely while walking on top of the refrigerator cars; but if for any reason a shed of insufficient height was maintained, then the exercise of ordinary care requires the railroad company to give warning in some way—either by word or other proper method—of the train's approaching the same, to all persons whose duties expose them to danger because of the structure.

*Evidence—Usage among Stockmen.*

> Evidence of what was usual and customary among stockmen as to going upon the top of cars under the circumstances and conditions surrounding deceased when he was killed, was properly admitted as tending to prove deceased was simply in discharge of his duty as indicated by a usage among stockmen, known by railroad men, and not guilty of contributory negligence.

*Lost Contract—Proof of Contents by Parol.*

> The written contract delivered to deceased by appellant showing his right to be on the train as an attendant on sheep in transit, having been lost, it was competent to prove its contents by parol.

(Decided December 7, 1898.)

Appeal from the District Court of Weber County, Hon. H. H. Rolapp, *Judge.*

Action by plaintiff as administrator to recover damages in consequence of the death of Charles A. Nelson, caused as alleged by the negligence of defendant. From a judgment for the plaintiff defendant appeals. *Affirmed.*

*Messrs. Marshall, Royle & Hempstead* for appellants.

The court erred in overruling defendant's motion for a non-suit (based principally upon the absence of negligence on the part of defendant and upon the contributory negligence of deceased.) *Fowler* v. *Pleasant Valley Coal Co.*, 52 Pac., 594; *Cunningham* v. *Chicago R. R.*, 5th McCreary, 471; *Railroad Co.* v. *Jones*, 95 U. S., 439; *Goodwin* v. *Railroad Co.*, 84 Me., 203.

The passenger is bound to conduct himself while upon the train in a prudent manner, and if he unnecessarily or negligently exposes himself to danger and as a consequence is injured, he cannot recover redress from the

company, although it was also negligent because in such case the fault is mutual. *Brennan* v. *R. R. Co.*, 45 Conn. 284; *Willis* v. *Long Island R. R. Co.*, 34 N. Y. 670; *Hickey* v. *Boston, etc., R. R. Co.*, 14 Allen, 427; Wood's Railway Law, Vol. 2, p. 1083 and cases cited; Patterson's Railway Accident, p. 282; *Penn. R. R. Co.* v. *Langdon*, 92 Penn. St. 21; *Goodwin* v. *R. R. Co.*, 84 Me. 203.

The fact that a passenger did not know that his act was careless will not avail him; as he was bound to know. *Penn. R. R. Co.* v. *Henderson*, 43 Penn. St. 449; *Southern R. R. Co.* v. *Kendrick*, 40 Miss. 374; *O'Donnell* v. *R. R. Co.*, 59 Penn. St. 239; *McIntyre* v. *N. Y. Central*, 34 N. Y. 287.

Even if the defendant was negligent, yet if the plaintiff's negligent or imprudent act or conduct contributed to his injuries he cannot recover. 12 E. & A. R. R. Reps., p. 115; *R. R. Co.* v. *Aspell*, 23 Pa. St. 147; *Piper* v. *Ry. Co.*, 50 N. E. 851.

The following cases hold directly and in principle that it is negligence in law, defeating recovery, for a man in charge of stock to climb over the top of the car; and hence that it was error to overrule appellant's motion for a non-suit. *Ry. Co.* v. *Lindley*, 42 Kansas, 714 and cases cited; *Kimball* v. *Palmer*, 80 Fed. 240; *Tuley* v. *Ry. Co.*, 41 Mo. App. 432; *Davis* v. *Ry. Co.*, 21 S. C. 93; *Wolf* v. *Ry. Co.*, 88 Ga. 210; *Sisco* v. *Ry. Co.*, 145 N. Y. 296; *Illick* v. *Ry. Co.*, 67 Mich. 632; *Jackson* v. *Crilly*, 16 Colo. 103; *Smith* v. *Ry. Co.*, 99 N. C. 241.

Evidence of a temporary custom of which the party to be affected has no knowledge is not admissible against him. *Wootters* v. *Kauffman*, 68 Tex. 493.

The existence of fact as to custom is a question for the

jury.   The validity of the custom from these facts for the court.   27 Am. & Eng. Enc. of Law, pages 713 and 732.

The court erred in overruling the defendants challenge of array of the jury.

Under section 1302 of the Revised Statutes, 1898, jury commissioners could only be appointed for the next calendar year.   The calendar year of January 3, 1898, when the order (objected to was made) was from January 1, 1898, to December 31, 1898.   As commissioners could only be appointed for the *next* calendar year, they could not act as jury commissioners except from January 1st to December 31st, 1899.   And yet the court because of the difficulties in the case, required the jury commissioners to act for 1898.   It is not for us to say, whether or not the court could have acted under chapter 52 of the Session Laws of 1896, or whether or not he had the right to summon the jury as at common law.   Perhaps he might have pursued either course.   We contend, however, that he had no right to violate section 1402 of the Revised Statutes of 1898, nor compel us to try the case by a jury not empaneled according to law.

The court erred in permitting oral testimony concerning the contents of the duplicate contract in the possession of the decedent.   The duplicate of defendant being in evidence and the parol testimony introduced enlarging defendant's copy of the contract.

It is an established rule that where there are duplicate originals, all of the originals must be accounted for before secondary evidence can be given of any one of them.   1st Phillips on Ev., 4th Am. Ed., 586; 1st. Greenleaf, 558.

Each duplicate writing is complete evidence of the intention of the parties.   1st Bou. Law Dic., Title Duplicate.   Anderson's Law Dictionary, Title Duplicate.

*David Evans, Esq., L. R. Rogers, Esq.,* and *A. G. Horn, Esq.,* for respondent.

The question of defendant's negligence has been settled by this court upon a previous appeal. (*Saunders* v. *Southern Pac.,* 13 Utah, 275.) Upon the authority of the following cases: Sherman & Redfield on Neg., Secs. 198, 199 and 200; *Carpenter* v. *Ry. Co.,* 56 Fed. Rep., 451; *Ry. Co.* v. *Horst,* 93 U. S., 291; *Hutchinson* v. *Carriers,* 555 B; Patterson Ry. Ac. Law, Secs. 211, 212; *Ry. Co.* v. *Lockwood,* 35 Ills. 357; *Ry. Co.* v. *Irwin,* 37 Kans. 701; S. C. 16 Pac. Rep., 146; *Ry. Co.* v. *Johnson,* 116 Ills. 206.

Counsel also contend that the injured parties were guilty of contributory negligence. This court has repeatedly held that contributory negligence is a question of fact for the jury to determine. It is likewise held in a previous appeal of this case, that the question of contributory negligence was one for the jury and not for this court. *Saunders* v. *Southern Pacific, supra; Lawson* v. *Ry. Co.,* 64 Wis. 447; *White* v. *Ry. Co.,* 67 Fed. R. 481; *Horst* v. *Ry. Co.,* 93 U. S. 291; *Johnson* v. *Ry. Co.,* 116 Ills. 206; *Wallace* v. *Ry. Co.,* 138 N. Y. 302; Hutchinson on Carriers, Sec. 654a; *Kain* v. *Ry. Co.,* 128 U. S. 91; *Irwin* v. *Ry. Co.,* 16 Pac. 146.

It is also contended on the part of counsel as we understand them that evidence of custom is not admissible. In similar cases to the one at bar it has been repeatedly held that evidence of custom and usage of stockmen to walk over the tops of cars while returning to the caboose is admissible for the purpose of rebutting the idea of contributory negligence. *Carpenter* v. *Ry. Co.,* 56 Fed. 541; *Goodes* v. *Boston, etc., Co.,* 38 N. E. 500; *Lowe* v. *Chicago, etc. Co.,* 56 N. W. 519; *Taylor* v. *Delaware,*

*etc., Co.,* 113 Penn. St. 162; *Wright* v. *Southern Pac.,* 46 Pac. 374.

Counsel further contend as we understand them, that after evidence of custom has been introduced it is the province of the court to determine whether a custom has been established. This is clearly not the rule as laid down by the authorities. 1 Thompson on Trials, Sec. 1058; *Sultana* v. *Chapman,* 5 Wis., 454; *Robinson* v. *U. S.,* 13 Wall, 363; *Chicago, etc.* v. *Tilton,* 87 Ill., 547; *Chesapeake Bank* v. *Swain,* 29 Md., 483; *Kuhlman* v. *Brown,* 4 Rich. L. (S. C.) 479; *Steamboat* v. *Hopkins,* 30 Miss., 703.

The charge of the court in these cases on the question of custom, was strictly in harmony with the views of this court, upon a previous appeal, in the case of *Nelson* v. *So. Pac.,* 15 Utah, 325.

The only point made on the question of the challenge to the array of the jury is, did the court have the power to appoint jury commissioners to select jurors under an order made by the court January 3d, 1898. The new code took effect January 1, 1898, in which is contained the jury law under consideration. Section 1302 Revised Code of 1898, provides: "The judge or judges of the district court of each county shall prior to December 1st of each calendar year, appoint for the next calendar year, two persons as jury commissioners, who shall be voters of the county, etc." No question is made as to the regularity in selecting a list of jurors in the manner and mode provided by the new code. The only question to be determined by this court is whether the time designated by the statute for the appointment of jury commissioners is mandatory or directory. It is our contention that the time within which the jury commissioners were to be appointed, as provided by the legislature, is directory and

not mandatory. But even were this not true the challenge to the panel cannot prevail.

Sec. 3140 Rev. Stats. of 1898, provides: "A challenge to the panel can only be founded on a material departure from the forms prescribed in respect to the drawing and return of the jury, or on an intentional omission of the proper officer to summon one or more of the jurors drawn."

The statute having designated the ground for challenge to the panel the same is exclusive of any other. Thompson on Trials, Sec. 34; 12 Enc. of Pl. & Pr. 422, and cases; *State v. Arnold*, 12 Ia. 479; *State v. Raymond*, 11 Nev. 98; *People v. Wallace*, 101 Cal. 281.

After having shown that the copy of the contract which decedent Nelson had in his possession was lost, plaintiff was entitled to show by Mr. Saunders whether or not the name of Nelson was upon that copy of the contract which Nelson had. In the light of the circumstances, by every principal of law, such evidence was properly admissible. *Lawson v. Railway Co.*, 64 Wis. 447.

ZANE, C. J.

This was an action to recover damages in consequence of the death of Charles A. Nelson, caused as alleged, by the negligence of the defendant in placing three refrigerator cars between the caboose and eleven cars loaded with sheep in charge of deceased and two other men, and in constructing and maintaining a snow shed so low that deceased was killed by it while passing over a refrigerator car from the sheep cars to the caboose, the refrigerator car being about eighteen inches higher than other freight cars. The trial of the cause commenced on January 11th, 1898. When the jurors were called, the defendant challenged the array because the commissioners who selected

them were not appointed prior to the first day of the preceding December, as directed by section 1302, R. S. U. 1898.

In the case of *Kennedy* v. *The Oregon Short Line Ry.* (decided at this term) we held the time for appointing commissioners, as well as the time for selecting jurors by them under Sec. 1306, is directory. The time named in a law for an act should be held directory, when not forbidden at another time unless the doing of it at another time would unjustly affect private or public interests. We find no language in the statute expressly denying the power to appoint the commissioners, or their power to select jurors later than the time mentioned in the law. Therefore we are of the opinion the court did not err in denying defendant's challenge to the array.

When this cause was before us at a former term we held, as we have also held in other cases, that under Sec. 9, Art. 8 of the Constitution, this court cannot review findings of fact further than is necessary to determine questions of law. Regarding that question as settled, we must recognize all facts as to which the evidence is conflicting as settled by the lower court. 15 Utah, 325.

One Philander V. Saunders was with the deceased when killed, and he was also injured, though not fatally. His case against the same defendant was before us on appeal from a judgment of non-suit at a former term. 13 Utah, 275.

The evidence in that record was in effect the same as the evidence in this, and some of the questions of law now raised we must regard as having been determined by us then.

This being an action at law, we must assume facts to exist which the evidence tends to prove, as upon a motion for a non-suit; in either case the same rule applies.

After stating the evidence at length in the case of Saunders against this defendant, *supra*, the court said, "Assuming these facts to be true, which is the rule for the purposes of a non-suit, the question is, do they present such a case of negligence on the part of the defendant, and such a want of contributory negligence on the part of the plaintiff as will render the defendant liable?" And later, in the same opinion, the court said:

"Being on the train, it was the plaintiff's duty to care for the sheep. After having attended to his duty in this regard, he was, of necessity, compelled to return to the caboose; because there was no place provided for him in the sheep cars to remain there, and to do so would disturb the sheep and produce the very effects which it was his duty to prevent. He could not return through the cars, on account of the refrigerator cars, through which he could not pass, having been placed next to the caboose, and therefore attempted to return over the top of them, as stockmen had been accustomed to do.

The conductor knew he was somewhere on the train, and was compelled to go over the tops of the cars to get to the caboose, but gave him no warning of its approaching the snowshed, which was of insufficient height to permit him to pass through safely while walking on the runuing boards. Under these existing facts and circumstances, it is not absolutely necessary or material to decide whether or not it was negligence *per se*, on the part of the railroad company, to maintain the snowshed in question at an insufficient height to allow a person to pass through safely while walking on top of the moving cars, although we are inclined to the affirmative of this view, as founded on both reason and justice. If, however, for any reason, an overhead structure, which exposes persons who are rightfully on a moving stock train, as was the plaintiff, to

unusual risks, may be unlawfully maintained at such height, then every principle of justice, as well as the exercise of ordinary care, requires that the company which maintains such structure shall give warning in some way—either by word, or other proper method—of the trains approaching the same, to all persons whose duties may expose them to the danger of being injured because of the structure. The giving of such warning is a duty which such company cannot fail to perform, and escape liability for injuries which result as a natural sequence, because of such failure, and in the performance of such duty it is bound to exercise due care."

Finally the court used this language:

"We conclude that the appellant was rightfully on the train, and had the right to assume that the snowshed was a safe structure, having received no notice to the contrary; that the respondent, on the occasion of the accident, was guilty of negligence, under the circumstances indicated by the proof; and that there was presented a question for the jury, and not one of law for the court. Whether or not the appellant, under the peculiar facts and circumstances of this case, was himself guilty of a want of ordinary care, which contributed to the injury, was also a question for the jury. The court was not warranted, under the circumstances shown by the record, in deciding as a matter of law, that the appellant was guilty of such contributory negligence as precluded a recovery, and therefore was not warranted in granting the non-suit, or denying the motion for a new trial."

The evidence in the record, now at hand, as to the right of the deceased to be upon the defendant's train, and as to the circumstances in view of which he attempted to go from the sheep cars over the refrigerator cars to the caboose, for the purpose of this appeal, are in effect the

same as in the case of Saunders against the same defendant, *supra*. The evidence of Saunders' right to be upon the train, and of the circumstances under which he was injured are substantially the same as that of the right of the deceased to be upon the train, and of the circumstances under which he was killed. The reason for putting the refrigerator cars between the sheep cars and the caboose appears to be frivolous, and the evidence fails to show any justification for maintaining the snowshed so low as to endanger the lives of persons rightfully on top of their cars. It appears that the sheds recently built are high enough to allow cars with persons standing upon them to pass safely through them. It is no sufficient excuse to say the raising of the sheds would involve additional expenditures of money. If it may be in any case impracticable to build any overhead structure not sufficiently high to permit persons rightfully upon their cars to pass under them safely, the company should take all reasonable precautions to prevent injury by giving timely warning of danger. The sound of a whistle might be sufficient to a person understanding it to mean overhead danger; but to another, not informed of its meaning, it would not be sufficient. The warning should be timely and reasonable, and calculated to give warning to all persons rightfully on top of its cars, of the particular danger ahead. *Chicago, M. & St. P. R'y. Co.* v. *Carpenter*, 56 Fed. 451; 1 Shearman & Redfield on Negligence, Sec. 198, (4th ed.) *C. & A. R. R. Co.* v. *Johnson*, 116 Ill., 206; *Indianapolis R. R. Co.* v. *Horst*, 93 U. S. 291.

Defendant's counsel assigns as error the rulings of the court admitting proof that persons in charge of stock usually pass over the tops of cars, between their stock and the caboose, in attending to it while in transit, and insist that the proof, if admitted, should be sufficient to establish a common law custom.

The evidence was not offered to prove a common law custom having effect of a law. Evidence that deceased in passing over the top of the car was doing what other stock men similarly situated were in the habit of doing was proper. Such evidence was admitted as tending to prove defendant was rightfully on top of the car when killed and not guilty of contributory negligence in being there; that he was simply in the discharge of his duty as indicated by a usage among stockmen recognized by railroad men. It is not necessary that such a practice shall possess all the elements of a common law custom.

In Morningstar v. Cunningham, 110 Ind. 328, the court said, "In such case, evidence of the known and usual course of a particular trade or business is competent with a view of raising a presumption that the transaction in question was according to the ordinary and usual course of the business to which it is related. * * * It is not essential that such a usage should be shown to be ancient 'That the memory of man runneth not to the contrary,' nor that it should contain all the other elements of a common law custom as defined in the books." Carter v. Philadelphia Coal Co., 77 Cal. 286.

Further, we are of the opinion the court did not err in permitting evidence of what was usual and customary among stockmen as to going upon the tops of cars under the circumstances and conditions surrounding the deceased when he was killed.

In the case of *Chicago, M. & St. P. Ry. Co.* v. *Carpenter, supra,* the court said:

"In determining the question of negligence in a given case (where the quality of the act in the respect of its being negligent or otherwise is not obvious) it is always proper to consider what other persons of ordinary prudence, who are engaged in the same calling, under like

circumstances, are in the habit of doing or ordinarily do. This is the universal test of negligence.

In view of these considerations, we have reached the conclusion that the testimony relative to the custom in vogue among persons having charge of live stock on freight trains was properly admitted, both for the purpose of rebutting the charge of contributory negligence, and for the purpose of showing that railway companies permit stockmen to pass over the tops of freight trains on the running boards provided for that purpose, when the vicissitudes of the journey render it necessary to do so, to reach their stock and attend to it, or to reach the caboose. As there was considerable testimony on the trial which tended strongly to show that persons in charge of live stock on freight trains frequently find it necessary, in attending to their stock properly, to get on the top of a train, and to walk back to the caboose, or to ride on the top of a car for some distance till the train stops; and as it further tended to show that it was a common practice on the defendant company's road, as well as upon other railroads, for stockmen to get on the top of a train, and to walk back to the caboose, when it becomes necessary to do so; and as it also tended to show that the company had never made any objections to such practice on the part of persons in charge of stock, we are constrained to hold, that it was the province of the jury to decide, in the light of all the evidence, as to the existence of the custom, and as to whether it was necessary for Carpenter, in the proper discharge of his duty, on the occasion in question, to get on the top of the train, and whether he went there rightfully in view of the existing usage, and in so doing exercised ordinary care and circumspection."

It appears from the evidence that one copy of the contract under which the sheep were shipped was given to

the deceased, and the other was retained by the defendant. The one retained was introduced in evidence, but the other after diligent search could not be found. The name of the deceased was not on the one retained by the company, and a witness who saw the one delivered testified, over the defendant's objection, that the name of the deceased was on it. The ruling of the court in admitting this testimony the defendant assigns as error.

It was proper to establish that deceased was rightfully on the train by proving his name was on the contract delivered to him by defendant as one who had a right to attend the sheep, and the written contract held by him being lost it was competent to prove its contents.

The rulings of the court in overruling objections to a number of other questions are assigned as error, but upon a careful consideration of them, we are unable to find any reversible error. The same may be said of the errors assigned upon exceptions to the charge of the court, and the refusal of requests asked by defendant's counsel.

The judgment is affirmed, with costs.

CHERRY, *Dist. Judge,* concurred.

BARTCH, J., *dissenting.*

I am of the opinion that, under the facts and circumstances as they appear in this record, the question of custom ought to have been withdrawn from the jury on the ground that, even if, under the conflicting evidence, respecting the custom, it be held to have existed, it was unreasonable. I therefore dissent.